**Pamela KRAMBEER, Plaintiff,**

v.

**Mitchell S. EISENBERG, Attorney at Law, Defendant.**

**Civil No. 3–95–928.**

United States District Court,
D. Minnesota,
Third Division.

May 2, 1996.

ing the subject of public interest.

Thomas J. Lyons, Jr., Lyons Sawicki Neese & Phelps, St. Paul, MN, for plaintiff.

Cynthia Frank Gilbertson, Maslon Edelman Borman & Brand, Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

## I. INTRODUCTION

This matter is before the Court upon Defendant Mitchell S. Eisenberg's Motion to Dismiss the Amended Complaint or for Summary Judgment. For the following reasons, the Court grants Defendant's motion.

## II. BACKGROUND

Defendant Mitchell Eisenberg is an attorney who lives and works in the state of Connecticut. He is not licensed to practice law in Minnesota, does not own property in Minnesota, and has never visited Minnesota. On or around July 19, 1995, Defendant, who apparently had been retained by the Leisure Romance Book Club ("the Club"), sent a letter to Plaintiff Pamela Krambeer on behalf of the Club requesting payment of a $16.96 debt allegedly owed by Plaintiff to the Club for goods sold and shipped to her. The letter read:

> Dear Pamela Krambeer:
>
> I have been retained by the Leisure Romance Book Club (the "Club") to collect your outstanding account. Due to your repeated failure to pay your account, after numerous statements from the Club, your balance of $16.96 is seriously overdue.
>
> Please pay your full balance immediately to:
>
> > Leisure Romance Book Club
> > 65 Commerce Rd.
> > Stamford, CT 06902
>
> If full payment, or good faith dispute of the debt, is not received by the Club within 30 days of your receipt of this letter, the Club may report your failure to pay to your credit bureau, and may file a lawsuit against you to compel payment. Reporting to your credit bureau and obtaining a court judgment will damage your credit rating.
>
> Your prompt attention to this matter is appreciated.

Amended Complaint, Ex. A. Defendant states that he composed and signed the letter

himself after reviewing Plaintiff's file. This was the only letter sent by Defendant to Plaintiff as well as the only contact he had with her in connection with the attempted debt collection.

Plaintiff asserts that Defendant "caused a letter to be mailed" to Plaintiff (Pl.'s Mem. at 2) but believes that Defendant permitted the Club to generate dunning letters and other collection communications on stationery purporting to be Defendant's. Plaintiff also alleges that Defendant failed to perform tasks required of a collection attorney, such as reviewing Plaintiff's file and determining the merits of the claim.

Plaintiff filed this lawsuit on October 6, 1995, alleging multiple violations of the Fair Debt Collection Practices Act ("FDCPA") arising from the letter sent to Plaintiff by Defendant. After learning of Plaintiff's attempts to serve him with process on October 17 and 18, Defendant telephoned Plaintiff to ask what the lawsuit was about. The parties' accounts of the conversation differ somewhat. According to Plaintiff, she "repeatedly instructed Defendant to contact her attorney," then terminated the phone call. Defendant states that after Plaintiff told him that she did not want to talk to him until she talked to her attorney, he requested the name of her attorney, thanked her, and they both hung up. Defendant states that he proceeded to search for Plaintiff's attorney's telephone number in directory assistance and the Martindale–Hubbell Legal Directory without success. Ten minutes after he placed the first call to Plaintiff, Defendant called her again for the sole purpose of obtaining her attorney's telephone number, which was the only subject discussed during that call. Plaintiff again has a different story. She claims that Defendant called again immediately and demanded to know what the lawsuit was about. Again, Plaintiff discontinued the call. The parties have not had further contact.

Plaintiff's Amended Complaint alleges that the letter and the second telephone call from Defendant to Plaintiff constitute separate violations of the FDCPA. 15 U.S.C. §§ 1692c(a)(2), 1692d, 1692d(5), 1692f, 1692g(a). Plaintiff claims that she has suffered mental anguish and humiliation as a result of Defendant's actions and as a result is entitled to recover damages for such mental anguish pursuant to 15 U.S.C. § 1692k(a)(1). Plaintiff also requests additional statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1692k. Defendant has moved to dismiss the Amended Complaint because he claims that this Court lacks personal jurisdiction over him and because the Amended Complaint fails to state a claim upon which relief can be granted. He moves in the alternative for summary judgment.

## III. DISCUSSION

For the purposes of Defendant's Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiff. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Although the ultimate burden of proof on the issue of jurisdiction falls upon Plaintiff, a nonmoving party need only make a prima facie showing of jurisdiction to defeat a motion to dismiss. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). The Court applies those standards in the following discussion.

Because the FDCPA does not provide for nationwide service of process, *Merrill Lynch Business Fin. Servs. v. Marais,* No. 94–C–3316, 1995 WL 608573, at *6 (N.D.Ill. Oct. 12, 1995), a plaintiff bringing suit under that Act must establish personal jurisdiction over the nonresident defendant by both satisfying the forum state's long-arm statute and showing that the nonresident has minimum contacts with the forum state such that the court's exercise of jurisdiction would be fair and in accordance with the due process clause of the Fourteenth Amendment. *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Ros-*

*tad v. On–Deck, Inc.,* 372 N.W.2d 717, 719 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Minnesota's applicable long-arm statute, Minn.Stat. § 543.19, reads, in relevant part:

As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, ... in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

. . . . .

(b) Transacts any business within the state ...

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum, or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn.Stat. § 543.19.

■■■ Section 543.19 extends jurisdiction to the fullest extent permitted by the Due Process Clause. *Soo Line,* 950 F.2d at 528; *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992). Thus, the Court needs only to decide whether an exercise of personal jurisdiction will comport with the constitutional requirements under the Due Process Clause. The constitutional touchstone is whether Defendant has established sufficient minimum contacts with Minnesota such that the exercise of jurisdiction here does not violate traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). There must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The Eighth Circuit and the Supreme Court of Minnesota have adopted the following five factors for determining these issues:

(1) the quantity of the contacts with the forum state; (2) the nature and quality of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Soo Line,* 950 F.2d at 529; *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965); *National City Bank v. Ceresota Mill Ltd. Partnership,* 488 N.W.2d 248, 252–53 (Minn.1992). The first three factors are the most important. *National City Bank,* 488 N.W.2d at 253.

**A. The Quantity of Contacts**

■■■ Defendant's contacts with Minnesota consist of a single debt collection letter sent to Plaintiff. Defendant also placed two telephone calls to Plaintiff in Minnesota, but both calls were made in response to the lawsuit that had already been filed and do not constitute contacts with the forum state for the purposes of this analysis. *See Kreisler Mfg. v. Homstad Goldsmith, Inc.,* 322 N.W.2d 567, 572 (Minn.1982). A single transaction with the forum state can be sufficient to establish personal jurisdiction over a defendant, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). When the quantity of contacts is as minimal as in this case, however, that factor is not dispositive; the Court must rely on the nature and quality of the contacts. *Trident Enters. Int'l, Inc. v. Kemp & George, Inc.,* 502 N.W.2d 411, 415 (Minn.Ct.App.1993). Furthermore, much more extensive contacts with Minnesota have been found not to confer personal jurisdiction in other cases. *See, e.g., Schuck v. Champs Food Sys. Ltd.,* 424 N.W.2d 567, 570 (Minn.Ct.App.1988) (holding that defendant's contacts with Minnesota,

which included correspondence it sent three times, correspondence it received eight times, and three telephone conversations, were insufficient to confer personal jurisdiction); *Maiers Lumber & Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585, 587 (Minn.Ct.App.1984) (holding that seven-month contract negotiation via telephone and mail did not support personal jurisdiction).

**B. The Quality and Nature of Contacts**

 For this Court to exercise personal jurisdiction over Defendant, Defendant's conduct and connection with Minnesota must be such that he should reasonably anticipate being haled into court here. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). Defendant's single letter to Plaintiff, without more, does not meet the *World–Wide* standard. The Eight Circuit has held repeatedly that the use of interstate mail or telephone alone is insufficient to establish minimum contacts with the forum state. *See, e.g., Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir.1995); *T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n*, 749 F.2d 523, 525 (8th Cir.1984); *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 656 (8th Cir.1982). The Eighth Circuit's rule applies even with the item mailed into the forum state is the basis for the ensuing lawsuit. *See General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1388 (8th Cir.1993) (finding no personal jurisdiction over defendant accounting firms in a lawsuit based on financial statements sent by defendants into forum state). Minnesota courts have also found mail contacts, without more, to be insufficient to establish personal jurisdiction over a nonresident defendant. *See, e.g., S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 488 (Minn.Ct.App.1990) (quoting *North Am. Fin. Corp. v. Amgrar Gesellschaft fur Farmlagen*, 702 F.Supp. 1435, 1439 (D.Minn.1989)).

 Courts have pointed out that the critical focus in a jurisdictional analysis is on "the relationship among the defendant, the forum, and the litigation." *West Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676, 678 (Minn.1983) (quoting *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980)). Defendants' contacts with the forum state, not their contacts with residents of the forum, must be considered by the Court. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 250–55, 78 S.Ct. 1228, 1238–41, 2 L.Ed.2d 1283 (1958)). This Defendant had very limited contact with one resident of Minnesota; he did not "purposefully avail [him]self of the privilege of conducting activities within the forum State" by sending Plaintiff a single debt-collection letter. *World–Wide*, 444 U.S. at 297, 100 S.Ct. at 567 (quotations omitted).

 Furthermore, the Supreme Court has held that "attenuated contacts" with a forum state should not subject a defendant to jurisdiction there; jurisdiction is appropriate only where contacts result from the defendant's conduct and create a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184–85 (allowing jurisdiction where a defendant has deliberately engaged in "significant activities" within a state) (citations omitted). Here, Defendant's contacts with Minnesota—the mailing of a single letter—are too attenuated to constitute a substantial connection with the state. Finding personal jurisdiction based on such limited contacts would impermissibly extend Minnesota's hold over a nonresident defendant.

**C. The Relationship Between the Contact and the Cause of Action**

Because Plaintiff's FDCPA claim arises out of the letter sent to her by Defendant, the connection between the contact and the cause of action weighs in favor of jurisdiction. At least three courts in other circuits have found that sending debt collection letters into the forum state is sufficient contact with that state to allow personal jurisdiction over the defendant. *See, e.g., Michel v. American Capital Enters., Inc.*, 884 F.2d ·582, 1989 WL 102039 (9th Cir.1989) (unpublished opinion); *Sluys v. Hand*, 831 F.Supp. 321 (S.D.N.Y. 1993); *Bailey v. Clegg, Brush & Assocs., Inc.*, No. 1:90–CV–2702–CAM, 1991 WL 143461 (N.D.Ga. June 14, 1991). In all three of those cases, however, the defendant's con-

tacts with the forum state were significantly more extensive than the contacts in this case. *Michel,* 1989 WL 102039, at \*3 (defendants initiated at least three debt collection contacts and committed several torts, including preventing plaintiffs from obtaining a mortgage and invasion of privacy); *Sluys,* 831 F.Supp. at 323–24 (debt collector sent letters to plaintiff as well as plaintiff's employer); *Bailey,* 1991 WL 143461, at \*1 (defendant mailed "numerous demand letters"). The only court to consider whether personal jurisdiction results from the mailing of a single debt collection letter to a plaintiff held that such contact could not confer jurisdiction over the defendant. *Hawkins v. Harston,* No. 93–CV–72031, at 7, 1994 WL 902366 (E.D.Mich. Jan. 31, 1994). The contacts in this case are similarly attenuated, despite the connection between the conduct at issue and the cause of action. To exercise jurisdiction over Defendant under these circumstances would violate traditional notions of fair play and substantial justice.

### D. The Interest of the Forum State

Minnesota has an interest in providing a forum for residents who have suffered injury, but that interest has been "de-emphasized in an attempt to slow the inexorable expansion of jurisdiction in state courts." *S.B. Schmidt Paper,* 452 N.W.2d at 489 (quoting *West Am. Ins. Co. v. Westin, Inc.,* 337 N.W.2d 676, 678 (Minn.1983)). Rather, the primary focus must be on Defendant's contacts with Minnesota, as discussed above. *Id.*

### E. The Convenience of the Parties

Minnesota is not a convenient forum for Defendant, a Connecticut resident. This factor cuts against jurisdiction.

## IV. CONCLUSION

Plaintiff has failed to allege minimum contacts between Defendant and the forum state of Minnesota sufficient to make out a prima facie showing of personal jurisdiction over Defendant. Therefore, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Defendant Mitchell S. Eisenberg's Motion to Dismiss the Amended Complaint or for Summary Judgment (Clerk Doc. No. 19) is GRANTED; and

2. Plaintiff Pamela Krambeer's Amended Complaint (Clerk Doc. No. 16) is DISMISSED WITHOUT PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**